PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

DAVID L. FAIRBAIRN,
                    *Plaintiff-Appellee,*

v.

UNITED AIR LINES, INCORPORATED,
                    *Defendant-Appellant.*

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO,
                    *Amicus Curiae.*

No. 00-1438

DAVID L. FAIRBAIRN,
                    *Plaintiff-Appellee,*

v.

UNITED AIR LINES, INCORPORATED,
                    *Defendant-Appellant.*

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE
WORKERS, AFL-CIO,
                    *Amicus Curiae.*

No. 01-1082

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-99-43-A)

Argued: February 26, 2001

Decided: May 4, 2001

Before WILKINS, NIEMEYER, and LUTTIG, Circuit Judges.

Reversed and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkins and Judge Luttig joined.

---

### COUNSEL

**ARGUED:** Roy Theodore Englert, Jr., MAYER, BROWN & PLATT, Washington, D.C., for Appellant. John O'Brien Clarke, Jr., HIGHSAW, MAHONEY & CLARKE, Washington, D.C., for Appellee. **ON BRIEF:** Andrew A. Nicely, MAYER, BROWN & PLATT, Washington, D.C.; James W. Gladden, Jr., Kristen W. Crosby, MAYER, BROWN & PLATT, Chicago, Illinois, for Appellant. Robert A. Bush, Ira L. Gottlieb, Joseph A. Kohanski, GEFFNER & BUSH, Burbank, California, for Amicus Curiae.

---

### OPINION

NIEMEYER, Circuit Judge:

We must decide in this case whether an employment dispute between United Air Lines, Inc. ("United") and an employee whom United discharged was subject to compulsory arbitration before an appropriate adjustment board by virtue of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq*., when the employee was not covered by any collective bargaining agreement nor represented by any union. Based on the fact that United had posted a notice in the workplace that "all disputes" would be "handled in accordance with the requirements of the Railway Labor Act" and a United supervisor's affirmation of that notice in a deposition, the district court ordered that the employment dispute be resolved as a "minor dispute" through compulsory arbitration under the RLA. Because we conclude that the compulsory arbitration requirements of the RLA do not extend to disputes arising under individual employment contracts, we reverse. Our reasons follow.

I

David Fairbairn was hired by United in December 1991 as a reservations sales and service representative in United's Sterling, Virginia, reservations center, and at that time, he signed a two-page employment contract with United, entitled, "Terms and Conditions of Employment." In the contract, Fairbairn agreed "to comply with the Company's rules and regulations" and manifested his understanding that his employment could be "terminated by United Air Lines or by me at any time subject only to applicable requirements of law." Posted in Fairbairn's workplace was a "Notice to Employees of Air Carriers," which stated that "[p]ursuant to the provisions of Section 2, Eighth, Railway Labor Act, as amended . . . you are hereby advised that all disputes between United Airlines and its employees will be handled in accordance with the requirements of the Railway Labor Act." This posting was required by the RLA because of United's status as a "carrier" subject to that Act. *See* 45 U.S.C. §§ 152 Eighth, 181. Although United was party to collective bargaining agreements with unions such as the International Association of Machinists and Aerospace Workers and the Air Line Pilots Association, International, which were subject to the RLA, Fairbairn did not belong to a union, nor did any employee at his site. Moreover, his class of employees was not represented by a union nor covered by any collective bargaining agreement,[1] although certain rules and regulations that applied to Fairbairn were promulgated as a direct result of collective bargaining between United and unions representing other employees.

During 1996 and 1997, Fairbairn applied for various transfers and promotions to other jobs available at United, none of which he received; for some, he was not even granted an interview. Perceiving these rejections to be unfair, Fairbairn filed several grievances with United, each of which, he alleges, United routinely denied. On April 30, 1997, Fairbairn met with Bill Koski, his operations supervisor, to obtain feedback regarding one of his unsuccessful interviews. During

---

[1]Subsequent to the termination of Fairbairn's employment, the National Mediation Board issued a decision certifying the International Association of Machinists and Aerospace Workers as a duly designated representative of the class of employees to which Fairbairn had belonged. *See In re United Airlines, Inc.*, 25 N.M.B. 411 (1998).

this meeting, Fairbairn became agitated and upset at United's management, including his manager, Diane Hallinan, for "placing roadblocks and obstacles in his path to success." Fairbairn made several threatening remarks directed at Hallinan and accused her of lying to him and arranging for others to make false charges against him. Fairbairn contends that Koski and Hallinan conspired to provoke him into losing his temper so that he could be charged with a violation of United's rules and regulations and thereby be pretextually discharged. He maintains the real reason for his subsequent discharge was his disability. Fairbairn has a form of epilepsy that causes him to suffer from seizures and occasional losses of memory.

In response to Fairbairn's conduct at the April 30 meeting, United did charge him with a violation of Article 34 of United's published rules of conduct, which provides that the "[m]aking or publishing false, vicious or malicious statements concerning" United or any of its employees constitutes grounds for termination. After giving Fairbairn a hearing, United discharged him by a letter, dated June 13, 1997. After unsuccessfully appealing the termination decision internally, Fairbairn asked United to submit the dispute to arbitration. When United declined, Fairbairn filed this action in federal court, alleging that United not only breached his contract of employment but also violated the RLA in refusing to provide him the grievance procedure and arbitration mandated for "minor disputes" under that Act. Fairbairn also alleged in his complaint that United violated the Americans with Disabilities Act in denying him transfers and promotions and in terminating his employment because of his disability and in retaliation for an earlier lawsuit that he had brought, unsuccessfully, seeking accommodation of the disability.

The district court entered summary judgment in favor of United on all of Fairbairn's claims. Later, however, it modified its judgment on the claim that the RLA had been violated and ordered the parties to arbitrate pursuant to that Act. The court stated, "given the notice posted by [United] and the deposition testimony of Diane Hallinan, Plaintiff is in fact covered under the RLA. As such, Plaintiff should be allowed to have his minor disputes heard in arbitration."

United noticed this appeal from the district court's order directing it to arbitrate under the RLA, contending that the district court

improperly assumed that the "minor dispute" provision of the RLA applies to Fairbairn, even though he is not covered by a collective bargaining agreement or represented by a labor union.[2] To express its agreement with United's position, the International Association of Machinists and Aerospace Workers filed a brief as *amicus curiae*.

## II

Fairbairn contends that his dispute over the process through which his employment was terminated was a dispute "growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a(5), and that therefore it must be arbitrated in accordance with the RLA as a "minor dispute," even though he is not covered by a collective bargaining agreement nor represented by a union. Drawing on the broad purposes of the Act to "provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," *id.*, Fairbairn argues that the compulsory arbitration provision of 45 U.S.C. § 184 covers any "minor dispute" and that what constitutes a "minor dispute" is not limited to a dispute arising under a collective bargaining agreement, but includes also a dispute arising out of an individual employment contract. If Fairbairn's position is correct, then the district court would not have had jurisdiction over this claim and its order compelling arbitration therefore would have been proper. *See United Transp. Union v. S.C. Pub. R.R. Comm'n*, 130 F.3d 627, 631-32 (4th Cir. 1997).

United argues that the entire RLA framework "presupposes, and depends on, the designation of a bargaining representative." Once a

---

[2]Contending that the order to arbitrate was either final or injunctive in nature, United initially relied on 28 U.S.C. §§ 1291 and 1292(a) for appellate jurisdiction. Concerned, however, that the order to arbitrate might not in fact be final or that it might not be appealable as an injunction under § 1292(a), United also requested that the district court certify its order for appeal under 28 U.S.C. § 1292(b). On November 29, 2000, the district court did so, and on January 19, 2001, we granted United permission to appeal. Accordingly, Fairbairn's motion to dismiss for lack of jurisdiction is denied.

representative has been properly designated, the RLA classifies labor disputes between the carrier and the union as the designated bargaining representative into "major disputes," which relate to the formation or modification of collective bargaining agreements, and "minor disputes," which relate to the interpretation or application of such agreements. As a more directly relevant argument, United asserts that the Supreme Court has "flatly foreclosed" any conclusion that the compulsory arbitration provisions of the RLA apply to individual employment agreements. *See generally Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246 (1994); *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386 (1942).

The RLA was enacted in 1926, during an era of protracted railway labor disputes that had adversely affected the national economy, to "provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions," 45 U.S.C. § 151a(5), and to "avoid any interruption to commerce or to the operation of any carrier engaged therein," *id*. § 151a(1).[3] To achieve its purposes, the Act treats separately and differently two classes of labor disputes, which the courts have denominated "major disputes" and "minor disputes." We have previously explained the distinction as follows:

> The RLA does not explicitly use the terms "major dispute" or "minor dispute." Rather, these are terms adopted by the courts from the vocabulary of railroad management and labor as a shorthand method of describing two classes of controversies Congress had distinguished in the RLA. . . . "[M]ajor disputes" seek to create contractual rights, while "minor disputes" seek to enforce those rights.

*United Transp. Union*, 130 F.3d at 631. In this case, Fairbairn characterizes his attempt to enforce his individual contract rights as a "minor

---

[3]Although the original Act applied only to rail carriers, in 1936 it was extended to cover the airline industry. *See* 45 U.S.C. §§ 181-188. Section 181 extends the original Railway Labor Act, with the exception of § 153, to "every common carrier by air engaged in interstate or foreign commerce." Section 184 replaces § 153 with respect to airlines.

dispute" for which the RLA provides compulsory and binding arbitration and over which the district court lacks subject matter jurisdiction. *See* 45 U.S.C. § 184.

Looking solely at the language of the RLA, it might appear, at first blush, to authorize any employee to invoke compulsory arbitration because it appears to cover disputes arising out of *any agreement* "concerning rates of pay, rules, or working conditions," without specifying whether the agreement is an individual employment contract or a collective bargaining agreement. 45 U.S.C. §§ 152 Sixth, 184. But because we are not interpreting this Act as a matter of first impression, we need not be concerned with our initial observations about the text. The Supreme Court has repeatedly addressed the RLA's scope, concluding as early as 1942 that the RLA does not apply to *all* agreements involving rates of pay, rules, or working conditions, but only to collective bargaining agreements. *See Williams*, 315 U.S. at 399-400 ("Independent individual contracts are not affected by the Act. . . . The crucial § 6 is phrased so as to leave no doubt that only agreements reached after collective bargaining are covered"); *see also Elgin, Joliet & E. Ry. v. Burley*, 325 U.S. 711, 723 (1945) (noting that covered minor disputes "contemplate[ ] the existence of a *collective agreement*" (emphasis added)). And this limiting construction of the Act's scope has been applied continuously and consistently over the 60 years since. *See Bhd. of R.R. Trainmen v. Chicago River & Ind. R.R.*, 353 U.S. 30, 33 (1957) (defining minor disputes as "controversies of the meaning of an existing *collective bargaining agreement* in a particular fact situation" (emphasis added)); *Consol. Rail Corp. v. Ry. Labor Executives' Ass'n*, 491 U.S. 299, 310 (1989) ("[R]eferring arbitrable matter to the Board will help to 'maintain agreements' by assuring that *collective-bargaining contracts* are enforced by arbitrators who are experts in 'the common law of [the] particular industry'" (alteration in original) (emphasis added) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579 (1960))); *Hawaiian Airlines*, 512 U.S. at 253 ("Minor disputes involve controversies over the meaning of an existing *collective bargaining agreement* in a particular fact situation" (emphasis added) (internal quotation marks and citation omitted)); *Brown v. Trans World Airlines*, 127 F.3d 337, 340 (4th Cir. 1997) ("*Hawaiian Airlines* instructs that the Railway Labor Act's arbitral mechanism does not mandate the arbitration of

state-law claims that exist independently of the *collective bargaining agreement*" (emphasis added)).

This restrictive interpretation of the term "agreement" as used in the RLA is consistent with its purpose of encouraging collective bargaining and resolution of associated disputes to prevent strikes that adversely affect interstate commerce. Obviously, an individual employee's dispute with management regarding that employee's individualized concern is highly unlikely to provoke the collective enthusiasm required for a strike and therefore unlikely to adversely affect interstate commerce. This is especially true when the employee is not a member of a labor union.

Fairbairn argues nonetheless that his right to arbitrate under the RLA has been implicitly recognized by the Supreme Court's decision in *Burley*, *see* 325 U.S. at 728-41, and therefore that the numerous other references in Supreme Court opinions to the requirement of a collective bargaining agreement to trigger arbitration are dicta that we should ignore. He points to *Burley*'s statement that the RLA's minor dispute procedures provide employees with rights that are "separate and distinct from any the collective agent may have to represent the collective interest," *id.* at 738, and to its holding that an employee has an individual right to utilize the minor dispute procedure against his employer without the involvement or interference of a union representative, *see id.* at 741. Fairbairn's argument, however, grossly mischaracterizes the holding and discussion in *Burley* and draws conclusions that are simply not supported by that case. *Burley* holds simply that when an employee has a grievance and is represented by the union, in pursuing resolution of that dispute under the RLA, the employee may proceed alone and reject the union's assistance. The holding is made against the necessary backdrop of a collective bargaining agreement and the collective interests of the union that might compete with the individual interests that the collective agent simultaneously represents. The Court in *Burley* found the individual's grievance to be a "minor dispute," characterizing a "minor dispute" as "contemplat[ing] the existence of a *collective agreement* already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." *Id.* at 723 (emphasis added). Indeed, if the *Burley* court had even considered the possibility that an employee not covered by a collective bargaining

agreement could bring a claim under the RLA, it surely would have mentioned it because such a possibility would have provided dispositive support for its holding that union involvement was not required by the Act. Instead, the *Burley* discussion contains the assumption that RLA-covered employees will be the subjects of collective bargaining agreements and therefore represented by unions generally. Thus, *Burley* in fact undermines rather than bolsters Fairbairn's argument.

Fairbairn also argues that he was covered by the RLA because United posted a notice in the workplace saying so. But the terms of the notice that United posted in the workplace do not support his contention. The notice is a printed form document, general in application, that is required by the RLA and that notifies employees of covered carriers that "all disputes between [the carrier] and its *employees* will be handled *in accordance with the requirements of* the Railway Labor Act." (Emphasis added). The notice both restricts the class of disputes handled to those between United and "the employees" collectively, not individually, and makes clear that disputes will be handled under the RLA only insofar as that Act *requires* them to be. Thus, by its own terms, the notice does not substantively alter the coverage of the RLA. In any case, it could not be read to alter the RLA's coverage. Although Fairbairn does not expressly make the argument, he implies that the posting of the notice and his reliance on it created some form of a promissory estoppel binding United to arbitrate under the RLA. This argument, however, has no merit because the RLA's compulsory arbitration mechanism is jurisdictional, divesting federal courts of any power to adjudicate disputes covered by compulsory arbitration. *See Consolidated Rail Corp.*, 491 U.S. at 303-04; *United Transp. Union*, 130 F.3d at 631. A private entity cannot, no more than can a court, override the jurisdictional limits established by Congress. *See Finley v. United States*, 490 U.S. 545, 547-48 (1989).

Finally, Fairbairn argues that because some of United's employees' policies, which applied to him, were the direct result of collective bargaining, he was somehow covered under the collective bargaining agreement. It is undisputed, however, that Fairbairn was not represented by the union, and, of course, any collective bargaining agreement creates rights only between the union on behalf of employees represented by it and the employer. Although Fairbairn seems to sug-

gest that he was a third-party beneficiary to such an agreement, he was not a member of the class of employees represented and was therefore not a direct or intended beneficiary. Any privileges that he may have obtained did not arise *under* the collective bargaining agreement, even if they applied as a consequence of it. The simple grant of benefits to an unrepresented employee like Fairbairn does not confer on him standing to enforce the terms of the agreement from which the benefits originated. This truth is brought into sharp focus by the fact that Fairbairn's arguments are rejected and opposed in this case by *both* parties to the collective bargaining agreement on which he relies.

We observe additionally that if we were to extend coverage of the RLA to every individual employment contract between a carrier and its individual employees — as Fairbairn's argument would have us do — the result would be dramatic, as we would then be required to conclude that state law enforcement of all such contracts is preempted. *See Hawaiian Airlines*, 512 U.S. at 254. Even if we were confronting the RLA as a matter of first impression, we would be loath to conclude that Congress meant to bring about such a result without clear language or evidence that it intended the RLA to bring about such a radical change in the legal landscape. *Cf. id.* at 255-56 ("[N]o proposed interpretation demonstrates a clear and manifest congressional purpose to create a regime that broadly preempts substantive protections extended by the States").

In sum, we conclude that Fairbairn's employment disputes with United arising in connection with his individual employment contract are not "minor disputes" covered by the RLA and therefore that they are not subject to compulsory arbitration before an appropriate adjustment board. Accordingly, we reverse the contrary ruling of the district court and remand with instructions to vacate the order compelling arbitration.

*REVERSED AND REMANDED*