staffing or flight interruptions. While ABX decided not to compete for certain seasonal contracts in light of the open-flying ban, its regular business base was not impaired. Though the Union's Article 13 interpretation effectively exercises strategic leverage in a minor dispute, ABX's economic injuries do not qualify the crew members' concerted ban on open-flying bidding as a "strike." Therefore, we hold that the district court erred in determining that this open-flying ban qualified as a "concerted interruption of operations" under the NLRA's definition of "strike."

## C.  Monetary Damages under *Marquar*

In its cross-appeal, ABX urges this court to overrule *Marquar*, 980 F.2d at 379-82, which prohibits money damages to carriers that suffer economic harm from a union's unlawful strike. It is unnecessary to decide the cross appeal, as we are ruling in favor of the Union. In addition, this panel cannot overrule controlling authority set forth by another panel. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).

We **AFFIRM** the district court's factual findings, **REVERSE** its decision that there is a "strike" in this case, and **VACATE** its order for injunctive relief on behalf of ABX.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0330P (6th Cir.)
File Name:  01a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ABX AIR, INC.,
      *Plaintiff-Appellee/*
      *Cross-Appellant,*

    *v.*

AIRLINE PROFESSIONALS
ASSOCIATION OF THE
INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, LOCAL UNION
NO. 1224, AFL-CIO,
      *Defendant-Appellant/*
      *Cross-Appellee.*

Nos. 99-4499/4540

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00812—Sandra S. Beckwith, District Judge.

Argued:  May 3, 2001

Decided and Filed:  September 19, 2001

Before:  SILER and GILMAN, Circuit Judges; DUGGAN, District Judge.[*]

———————————

**COUNSEL**

**ARGUED:** John R. Doll, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellant.  E. Scott Smith, FORD & HARRISON, Atlanta, Georgia, for Appellee.  **ON BRIEF:** John R. Doll, Julie C. Ford, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellant.  E. Scott Smith, Sarah B. Pierce, FORD & HARRISON, Atlanta, Georgia, Scott A. Carroll, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee.  Daniel M. Katz, KATZ & RANZMAN, Washington, D.C., David K. Montgomery, KEATING, MUETHING & KLEKAMP, Cincinnati, Ohio, for Amici Curiae.

———————————

**OPINION**

———————————

   SILER, Circuit Judge.  Defendant, Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224, AFL-CIO ("Union"), appeals the injunction entered by the district court on behalf of plaintiff, ABX Air, Inc. ("ABX").  The Union argues that the district court lacked subject matter jurisdiction to issue an injunction because its members' concerted refusal to bid for open-flying time did not constitute an impermissible strike in aid of a minor dispute.  Rather, it asserts that its members' concerted action was in accord with the collective bargaining agreement ("CBA") and was not a strike action relating to the separate minor dispute over the CBA's three-days-off rule.  In its cross-appeal, ABX contends that the district court erred by

———————————

[*]    The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

"exert every reasonable effort to make and maintain agreements" under § 152, First.  *See id.* at 1307-09.  As a result, the court enjoined the union to take specific steps to stop the no-overtime campaign.

   As a threshold matter, a fundamental distinction exists between the above three cases and the case before us now.  Each of those cases involved a major dispute, during which a union is required to maintain the status quo.  In contrast, the dispute between ABX and the Union is a minor one, during which there is no requirement to maintain the status quo, thus making certain types of concerted action available that would not be during a major dispute.  Indeed, we cannot find any case in which a union was held to have violated the RLA during a minor dispute by encouraging its members to refrain from engaging in conduct that is voluntary under a CBA.

   Furthermore, the cases relied on by ABX  show that a "concerted interruption of operations" requires more than higher operational costs incurred by the necessary exercise of contract provisions and alleged losses from foregone contract opportunities.  In contrast to *Texas Int'l Airlines*, the Union members' open-flying ban did not cause a work slowdown.  Unlike *Delta Air Lines* where the union argued that the CBA allowed all pilots to refuse to work overtime, here the Union's interpretation of the open-flying provision did not impair ABX's ability to use junior-manning to assign flights.

   Rather, this case more closely resembles the facts in *United Air Lines*.  While the Union's interpretation of Article 13 denotes an intent to pressure ABX in resolving the three-days-off rule dispute, the resulting concerted conduct is allowed under the CBA.  Though higher costs and lost business opportunities can serve as evidence of an interruption of operations, ABX did not suffer sufficient economic harm in this case to show an "interruption of operations."  Under the CBA, junior-manning is not the optimal means of assigning flight staff and its use certainly increases costs.  However, ABX agreed to this contract provision, utilized it to legally assign crew members to open flights, and did not suffer

concerted action of the crew members and Union qualified as a "concerted interruption of operations," three cases provide guidance.

*Air Lines Pilots* Ass'*n v. United Air Lines*, Inc., 802 F.2d 886, 905-07 (7th Cir. 1986), and *Texas Int'l Airlines, Inc. v. Air Line Pilots Ass'n,* 518 F. Supp. 203, 208 (S.D. Tex. 1981), dealt with concerted actions taken during CBA negotiations. While the Seventh Circuit in *United Air Lines* stated that the consequences of union conduct short of an outright strike could qualify as a strike, it did not find that the pilots' concerted abuse of sick leave, which arguably increased operational costs, and efforts to discourage business resulted in economic harm sufficient to qualify as a strike. *See id.* at 906-07. Rather, in the absence of any work stoppages, mass demonstrations, or economic harm, the court ruled that the union's actions did not constitute an unlawful strike. *See id.* at 907.

In *Texas Int'l Airlines,* the union directed its pilots to exercise their contractual right to sick leave and the pilots engaged in other concerted actions that resulted in a work slowdown and increased the carrier's operating costs. *See* 518 F. Supp. at 212-14. In issuing an injunction, the district court found that these actions interrupted the carrier's operations and were intended to pressure the airline to concede to the union's bargaining demands. *See id.* at 212-14, 217.

Finally, the Eleventh Circuit recently ruled in a case where pilots engaged in a concerted refusal to fly overtime during contract negotiations in *Delta Air Lines v. Air Line Pilots Ass'n,* 238 F.3d 1300, 1309 (11th Cir. 2001). The court rejected the union's contention that this was a minor dispute because the CBA "arguably" permitted all pilots to refuse to work overtime. *See id.* at 1307. It stated that such an interpretation defied industry practice to structure flight schedules using open-flying time as part of normal operations. *See id.* at 1307, 1309. The court then found that the pilots' concerted action violated the union's statutory obligation to

denying it monetary damages as a remedy for an illegal strike in aid of a minor dispute based on *CSX Transp., Inc. v. Marquar*, 980 F.2d 359 (6th Cir. 1992).

We **AFFIRM** the district court's factual finding that this case involves a minor dispute over the three-days-off rule and **REVERSE** its ruling that the concerted action of the crew members constituted a strike.

## I. BACKGROUND

ABX, also known as Airborne Express, is a major air freight carrier. In June 1997, ABX and the Union entered into a new CBA. Under Article 13 of the agreement, crew members voluntarily bid for open-flying times, which are scheduled flights that have not been assigned as part of a crew member's monthly schedule, are open because of an employee's absence or an assignment change, or have not been bid upon. Open-flying time is awarded to eligible senior crew members first. If any flights remain, the company assigns junior crew members who are compensated at a higher rate of pay, a practice called junior-manning.

The Union and ABX had a number of unresolved grievances regarding the interpretation of the old and new CBAs. In particular, they disagreed on how to interpret the new three-days-off rule, a provision requiring a minimum of three days off for crew members with any scheduled time-off. Both parties agreed to submit this minor dispute for arbitration in October 1997.[1]

In August 1997, the Union's Executive Board members decided that they would not bid on open-flying time until the Union's disputes and grievances with the company were resolved. The Executive Board announced its decision at a subsequent membership meeting, and a number of attendees stated that they too would not bid for open-flying. Following

---

[1] The parties did not include the arbitrator's decision in the record or their briefs.

this, a memorandum from the Executive Board's president and the Union's telephone hotlines focused on the three-days-off rule dispute and the decision by the board and members to not bid on open-flying time until their problems with ABX were resolved. All hotlines urged members to remain 100 percent united. In response to a letter from ABX stating that the Union's concerted refusal to bid on open-flying time was illegal, one hotline stated that "Your union leadership is not asking you to exercise any illegal job action." Another hotline stated that "Each of us needs to prepare for the long haul should Management continue down the road they have chosen with regard to scheduling."

In September 1997, no Union member bid on open-flying time, and of the 617 open lines available in October, only 13 bids were submitted. Some of those who bid on October flights stated they were harassed by other Union members. ABX claims the Union's self-help action cost it more than $200,000 for the additional junior-manning required. Though it had won prior bids for Christmas season charter contracts, ABX did not compete for a $3 million contract in 1997 based on staffing concerns raised by the open-flying ban.

ABX filed a complaint alleging that the Union and its members boycotted open-flying bidding and that this concerted action constituted an illegal strike in aid of a minor dispute in violation of 45 U.S.C. § 184 (1999). It also asserted that this concerted action violated the Union's mandatory duty under 45 U.S.C. § 152, First (1999) to exert every reasonable effort to resolve its dispute with ABX over the proper interpretation of the three-days-off rule. ABX requested injunctive, declaratory, and monetary remedies.

The district court rejected ABX's initial request for a preliminary injunction, holding that ABX had not shown that the concerted ban on open-flying had caused an interruption in its operations. In considering Article 13 of the CBA, it stated "by declining to bid for overtime but accepting it when assigned, Defendant's members may exert influence without interrupting Plaintiff's operations and, thus, without engaging

As the RLA does not define the term "strike," the district court properly looked to 29 U.S.C. § 142(2) for assistance in determining whether the Union's conduct qualified as a "strike" in this "carefully drawn analog[y]" between the NLRA and RLA. *Trans World Airlines, Inc. v. Indep. Fed. of Flight Attendants*, 489 U.S. 426, 432-33 (1989); *see also Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369 (1969). In applying the NLRA's definition of "strike," the district court held that its provision regarding "concerted interruptions of operations by employees"[3] includes this case's factual circumstances: "a concerted activity by employees that disrupts the employer's operations and causes a loss of business or profit, promoted and directed by their union, pending resolution of a minor dispute, with the intention of exerting pressure upon the employer to change its interpretation of the existing collective bargaining agreement." While the district court noted cases stating that a concerted refusal to work overtime may constitute a strike, this circuit has not ruled that a concerted refusal to volunteer for overtime, when the work is assigned and willingly performed by others according to the CBA, is a strike.

While the parties' duty to negotiate yields to the adjustment board's authority to resolve minor disputes once they are submitted and no status quo requirement applies to minor disputes, the RLA does not sanction strike actions camouflaged as minor disputes, which threaten to undermine its grievance resolution provisions. *See, e.g., Conrail*, 491 U.S. at 310 (stating that if the employer asserts that the agreement permits it to make a change in working conditions without prior negotiations and the claim is arguably justified by the agreement and not made in bad faith, the employer can make the change); *Marquar*, 980 F.2d at 361 n.2 (stating that an adjustment board has exclusive jurisdiction to resolve minor disputes that the parties cannot resolve). In determining whether the district court properly held that the

---

[3]The statute's construction treats concerted interruptions of operations as a different form of concerted action from a work stoppage, slowdown, or strike. *See* 29 U.S.C. § 142(2).

### A.    Factual Issue – Minor Dispute over Open-Flying or Three-Day Rule

The Union argues that the record does not support the district court's factual findings that this case involves a minor dispute over the CBA's three-days-off rule and that the Union promoted and directed the open-flying ban in aid of this minor dispute.    Rather it argues that this case simply involves a minor dispute over Article 13's open-flying provisions, separate and apart from the three-days-off rule.  Based on the Union's interpretation, Article 13 provides crew members with an implicit right to not volunteer for open-flying time, separately or in concert.  The Union contends that the district court "ignored the uncontested evidence" that its members voluntarily chose not to bid for open-flying time, without direction from Union officials, based on their dissatisfaction with ABX's slow response to their grievances on several issues.  Thus, the Union contests the factual finding that it "conceived of and promoted" a ban on open-flying time bids in aid of its dispute over the three-days-off rule.

Overall, the Union reiterates its characterization of the evidence presented at trial, which was contested by ABX, and fails to demonstrate clear error by the district court.  Giving due regard to the court's credibility judgments at trial, we affirm the district court's factual findings and hold that it had subject matter jurisdiction to determine whether the concerted actions of the Union and its members under Article 13 constituted an illegal strike.  *See* Fed. R. Civ. P. 52(a).

### B.  Strike or Minor Dispute

The key question is whether the Union's promotion of a concerted action under the CBA's voluntary open-flying bidding provision constitutes an illegal strike arising from another minor dispute.  If there is no strike, there is no subject matter jurisdiction for the issuance of an injunction.  *See Conrail*, 491 U.S. at 304; *Chicago River*, 353 U.S. at 41-42; *Marquar,* 980 F.2d at 369.

in a strike."  Therefore, without an interruption in operations, the court ruled that the Union members' action was not a strike, and it had no jurisdiction to issue an injunction.  Upon an interlocutory appeal, this court ruled that the injunction request was moot because the bidding ban had ceased, but remanded the case for further consideration of the declaratory and monetary relief issues.  *See ABX Air, Inc. v. Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters, Local 1224*, No. 97-4124, 1998 WL 165146 (6th Cir. Apr. 3, 1998).

At the subsequent trial, the court considered the question of whether the actions of the Union and its members constituted an "interruption of operations" at ABX and thus an illegal strike.  In its findings of fact, the court found that the Union conceived of and promoted the ban on open-flying, and that its members' concerted action was in aid of the minor dispute over the three-days-off rule, which was subject to arbitration.  In defining "strike," the court relied on 29 U.S.C. § 142(2) of the National Labor Relations Act ("NLRA"), which states that the term "strike" includes a "concerted interruption of operations by employees."  As a question of first impression and in the absence of authority to the contrary, the court concluded that the definition of "strike" encompasses "concerted activity by employees, promoted and directed by their union, pending resolution of a minor dispute, that disrupts the employer's operations and causes a loss of business or profit with the intention of exerting pressure upon the employer to change its interpretation of the existing collective bargaining agreement."  On this basis, the court held that the Union's activities violated 45 U.S.C. § 184 and § 152, First (1999), and thus it had  jurisdiction to enjoin the Union from threatened future action.  In addition, the court denied ABX's prayer for money damages based on  *CSX Transp., Inc. v. Marquar*, 980 F.2d 359, 382 (6th Cir. 1992).

The Union appeals the district court's ruling on declaratory and injunctive relief, and ABX cross-appeals its denial of monetary damages.[2]

## II. STANDARD OF REVIEW

The district court's "factual findings must be upheld unless they are clearly erroneous." *Taylor and Gaskin v. Chris-Craft Indus.*, 732 F.2d 1273, 1277 (1984) (citing Fed. R. Civ. P. 52(a)). As a matter of law, this court reviews *de novo* the district court's statutory construction of the Railway Labor Act ("RLA") regarding the scope of its subject matter jurisdiction. *See United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990).

## III. DISCUSSION

Under 45 U.S.C. § 181 (1999), all RLA provisions under 45 U.S.C. § 151 *et seq.* apply to air carriers engaged in interstate and foreign commerce and their employees, except § 153 which is replaced by § 184. Section 152, First sets forth two core duties applicable in all disputes between carriers and their employees. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n,* 491 U.S. 299, 310-11 (1989) (hereinafter *Conrail*); *Marquar*, 980 F.2d at 368 (citing *Chicago & N.W. Ry. v. United Transp. Union*, 402 U.S. 570, 574 (1971)). First, both parties shall "'exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions.'" *Marquar*, 980 F.2d at 368 (citation omitted). Second, both parties shall "'settle all disputes, whether arising out of the application of . . . agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute." *Brotherhood of R.R. Trainmen v. Chicago River & Ind. R.R. Co.*, 353 U.S. 30, 36 (1957) (hereinafter *Chicago River*) (citation omitted).

[2]The Union asserts that ABX's notice of cross-appeal failed to properly designate the decision appealed from. Based on Fed. R. App. P. 3, ABX's cross-appeal is valid.

Because there is no equivalent of the National Railroad Adjustment Board for the airline industry, 45 U.S.C. § 184 requires every carrier and its employees to establish an adjustment board by agreement. *See Conrail*, 491 U.S. at 304 n.4. If the parties fail to settle disputes "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" through negotiation, one or both of the parties may petition the adjustment board to resolve it. 45 U.S.C. § 184; *see also Conrail*, 491 U.S. at 304 n.4.

Under the RLA, the Supreme Court distinguishes between major and minor disputes between carriers and employees regarding their CBAs. *See Conrail*, 491 U.S. at 302 (acknowledging the first recognition of this distinction under *Elgin, Joliet & E. Ry. v. Burley,* 325 U.S. 711, 723 (1945)). Major disputes involve disagreements over the creation of contractual rights during bargaining for a CBA or to change the terms of an existing agreement. *See id.*; *Marquar*, 980 F.2d at 361 n.2. Under 45 U.S.C. § 152, Seventh and § 156, the parties must exhaust a lengthy bargaining and mediation process. *See id.* Both are obligated to maintain the status quo during the required process, and the courts can enjoin any status quo violation. *See Conrail*, 491 U.S. at 302-03. If no agreement is reached, the parties may resort to economic force, including strikes. *See id.*; *Marquar,* 980 F.2d at 361 n.2.

Minor disputes include controversies over the meaning or application of an existing CBA provision regarding pay, rules, or working conditions to a specific situation or omitted case. *See Conrail,* 491 U.S. at 303; *Marquar,* 980 F.2d at 361 n.2. If discussions fail to yield a solution, both parties are subject to compulsory and binding arbitration before an adjustment board under 45 U.S.C. § 152, Sixth and § 184. *See id.* While the courts have no jurisdiction to resolve the substance of minor disputes, they can enjoin strikes over minor disputes in order to enforce compliance with the RLA's dispute resolution provisions. *See Conrail*, 491 U.S. at 304; *Chicago River*, 353 U.S. at 41-42; *Marquar,* 980 F.2d at 369.