RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0122p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AIRLINE PROFESSIONALS ASSOCIATION, TEAMSTER
LOCAL UNION 1224, AFFILIATED WITH THE
INTERNATIONAL BROTHERHOOD OF TEAMSTERS-
AIRLINE DIVISION, AFL-CIO,

        *Plaintiff-Appellee,*

    *v.*

ABX AIR, INC.,

        *Defendant-Appellant.*

No. 03-3980

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 02-00320—S. Arthur Spiegel, District Judge.

Argued: August 10, 2004

Decided and Filed: March 10, 2005

Before: BATCHELDER and GIBBONS, Circuit Judges; STAFFORD, District Judge.[*]

---

## COUNSEL

**ARGUED:** E. Scott Smith, FISHER & PHILLIPS, Atlanta, Georgia, for Appellant. John R. Doll, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellee. **ON BRIEF:** E. Scott Smith, FISHER & PHILLIPS, Atlanta, Georgia, Scott A. Carroll, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellant. John R. Doll, Julie C. Ford, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellee.

---

## OPINION

---

    ALICE M. BATCHELDER, Circuit Judge. ABX Air Inc. ("ABX") appeals the district court's grant of summary judgment to Airline Professionals Association of the International Brotherhood of Teamsters ("Union"), on the Union's claim that by requiring a pilot returning from disability leave to submit to examination by an ABX-designated physician, ABX violated the status quo provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151a et seq. The district court held

---

    [*]The Honorable William H. Stafford, Jr., United States District Judge for the Northern District of Florida, sitting by designation.

that it had jurisdiction over the Union's motion for summary judgment and request for a permanent injunction because the Union's complaint presented a "major dispute" under the RLA. The district court then granted summary judgment to the Union on the merits of the claim. Because we find that the district court lacked subject matter jurisdiction over the Appellant's claim, we vacate the judgment of the district court and remand with instructions that the complaint be dismissed.

## I.

ABX operates as a common carrier, delivering packages and freight by air. From June of 1997 through July 31, 2001, ABX and the Union were parties to a collective bargaining agreement ("CBA"), pursuant to which the Union was the collective bargaining representative of various employees, including pilots, of ABX. At all times relevant to this matter, ABX and the Union were engaged in contract negotiations for a successor agreement, each having served upon the other a Section 6 notice, the requisite notice of intent to seek modifications of the 1997 CBA. *See* RLA Section 6, 45 U.S.C. § 156.

In the fall of 1999, Byron C. Russell, a pilot employed by ABX, applied for disability benefits after he was diagnosed by his physician as suffering from "stress and anxiety." Unwilling to rely solely on the diagnosis of Russell's doctor, ABX insisted that Russell undergo an independent medical examination ("IME") with Dr. Joseph Westermeyer. Russell complied, and Dr. Westermeyer found that he was suffering from conditions more severe than mere stress and anxiety, and was unfit to fly. Dr. Westermeyer provided a full report to ABX, and Russell began receiving disability benefits. He remained on disability leave until April 1, 2002, when he notified ABX of his readiness to return to work. Despite Russell's presenting a second class medical certificate from the Federal Aviation Administration ("FAA") clearing him to fly, ABX's flight management had concerns about whether Russell was in fact fit to fly an airplane. ABX therefore directed him to attend another IME by Dr. Westermeyer, which Russell refused to do.

On April 25, 2002, the Union filed a grievance on behalf of Russell, which complained that by requiring Russell to submit to an IME before returning to work, ABX violated the terms of the 1997 CBA between the parties. Shortly thereafter, while the grievance was pending, the Union filed a Complaint for Declaratory Judgment and a Motion for Preliminary Injunction in federal district court, claiming that ABX's action violated the RLA by imposing new working conditions not authorized by the parties' CBA. The district court held that the complaint raised a major dispute under the RLA, over which the court had jurisdiction, and granted summary judgment to the Union. ABX timely appealed.

## II.

One of the purposes of the RLA is "[t]o avoid any interruption to commerce or to the operation of any [air or rail] carrier engaged therein." 45 U.S.C. § 151a(1). To that end, the RLA provides mandatory procedures for resolving disputes between carriers and unions. 45 U.S.C. § 151a. For purposes of determining which of the RLA's procedures are to be followed in resolving such disputes, the courts have classified those disputes as either "major" or "minor." *See Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 732 (1945). Major disputes are defined as disputes "over the formation of collective agreements or efforts to secure them. They arise where there is no such agreement or where it is sought to change the terms of one . . . ." *Id.* at 723; *see also ABX Air, Inc. v. Airline Professionals Assoc.*, 266 F.3d 392, 396 (6th Cir. 2001) ("*ABX I*") ("Major disputes involve disagreements over the creation of contractual rights during bargaining for a CBA or to change the terms of an existing agreement."). Minor disputes, on the other hand, can be resolved by interpreting the terms of the CBA. *Airline Professionals Assoc. v. ABX Air, Inc.*, 274 F.3d 1023, 1028 (6th Cir. 2001) ("*ABX II*"). Stated differently, major disputes seek to create contractual rights; minor disputes seek to enforce them. *Elgin*, 325 U.S. at 723.

When a major dispute occurs, the parties must engage in the lengthy process of bargaining and mediation set out in RLA §§ 5 and 6, 45 U.S.C. §§ 155 and 156. *Consolidated Rail Corp. v. Railway Labor Executives' Assoc. et al.,* 491 U.S. 299, 302 (1989) (hereinafter "*Conrail*"). During that process, the parties must maintain the "status quo," and the employer is prohibited from implementing the contested changes in working conditions. *Id.* at 302-3. The district courts have subject matter jurisdiction to enjoin a violation of the status quo pending the exhaustion of the required procedural remedies. *Id.* at 303.

Minor disputes, by contrast, must first be resolved through the normal grievance procedure. *Conrail*, 491 U.S. at 303. We held in *ABX I* that

> [i]f discussions fail to yield a solution, both parties are subject to compulsory and binding arbitration before an adjustment board under 45 U.S.C. § 152, Sixth and § 184. While the courts have no jurisdiction to resolve the substance of minor disputes, they can enjoin strikes over minor disputes in order to enforce compliance with the RLA's dispute resolution provisions.

*ABX I*, 266 F.3d at 396 (internal citations omitted).

## III.

The district court had jurisdiction over the Union's complaint only if the dispute over ABX's requirement that the pilot submit to an IME before returning from disability leave is a major dispute. We review de novo the district court's construction of the RLA regarding the scope of its subject matter jurisdiction. *ABX I*, 266 F.3d at 395.

ABX has the burden of demonstrating that this case involves a minor dispute under the RLA, but that burden is not heavy. As the *Conrail* Court explained,

> [I]f an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (*i.e.,* the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.

491 U.S. at 310. Anticipating *Conrail*, the Seventh Circuit said in *Railway Labor Executives Ass'n v. Norfolk & W. Ry. Co.*, "[b]ecause a major dispute can escalate into a strike, if there is any doubt as to whether a dispute is major or minor a court will construe the dispute to be minor." 833 F.2d 700, 705 (7th Cir. 1987).

ABX concedes that at the time Russell was asked to submit to an IME, the parties had served on each other the requisite Section 6 notices and were renegotiating the CBA, and that they were therefore involved in a major dispute. As a preliminary matter, we must decide whether every dispute arising under a CBA that is being renegotiated is a major dispute. Addressing this question, the D.C. Circuit has held that:

> The RLA was designed to provide mechanisms that would "facilitate the orderly and peaceful resolution of labor-management disputes." To that end, Congress devised one track, with a focus on arbitration, for minor disputes that center around the definition of rights already agreed upon, and another, with a focus on mediation (and potential presidential intervention), for major ones that raise broader issues likely in themselves to engender a strike. The expiration of the collective bargaining agreement tells us little or nothing about the track for which a dispute is suitable

> . . . . Accordingly, we reject the proposition that the expiration of the agreements and filing of § 6 notices automatically make the dispute a major one.

*Air Line Pilots Assn. v. Eastern Air Lines, Inc.*, 863 F.2d 891, 899 (D.C. Cir. 1998) (internal citations omitted). *But see International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aloha Airlines, Inc.*, 776 F.2d 812, 816 (9th Cir. 1985) (holding that dispute occurring after termination of CBA and filing of § 6 notices cannot be minor). We agree with the reasoning of the D.C. Circuit, and we hold that the parties' renegotiation of the CBA does not automatically require that the issue of whether ABX may require a pilot to submit to an IME before returning from disability leave be classified as a major dispute. We therefore must determine whether this dispute is, on its facts, a major dispute.

The district court held that ABX's position was not arguably justifiable because there is "no provision in the [CBA] which explicitly allows [ABX] to demand [an IME];" there was no "past practice and custom which would establish [the requirement of an IME] as an implied term;" and ABX had other methods to ensure flight safety. Therefore, the court held, this dispute was a major dispute, over which the court had jurisdiction, and the Union was entitled to judgment on the merits because "the practice of requiring IME's upon return from disability leave, when a pilot has an FAA issued medical certificate, [is] a violation of the status quo from which the Court must enjoin defendant from engaging."

The district court erred in determining that this dispute between ABX and the Union is a major dispute. The court's observation that the CBA does not explicitly permit ABX to require an IME before allowing a pilot to return to work after disability leave, while correct, does not, either alone or in conjunction with the court's findings on past practice and the availability of other methods to ensure safety, lead to the conclusion that ABX's position is not arguably justifiable.

Collective bargaining agreements may include both express and implied terms. *Conrail*, 491 U.S. at 311. Implied terms are part of the CBA and may be used to justify the employer's challenged actions. *ABX II*, 274 F.3d at 1028. This Court found those implied terms in *ABX II*, a case involving the same parties and the same CBA before us today, holding that "management retains discretion with respect to the hiring, firing, promoting, supervising, planning, and other management functions, except as limited by the collective bargaining agreement and public law." 274 F.3d at 1029 (citing *Appalachian Regional Healthcare v. United Steelworkers of America*, 245 F.3d 601, 604-05 (6th Cir. 2001)). This principle "stems from the understanding that collective bargaining agreements . . . [cannot] expressly regulate every conceivable employment matter." *Id.* at 1031. *See also Appalachian Regional Healthcare*, 245 F.3d at 606 ("[t]he [Collective Bargaining] Agreement need not include provisions permitting management action on every conceivable employment matter; rather, on issues not discussed in the Agreement, management retains discretion").

As the district court noted, the CBA is silent as to ABX's prerogative to require Russell to submit to an IME, that is, it contains neither an express authorization for nor an explicit prohibition of the requirement. Therefore, unless under the CBA or the law, *see ABX II*, 274 F.3d at 1029, ABX did not even arguably retain discretion to determine the fitness of its pilots to fly, this dispute is a minor one and the district court lacked jurisdiction to review its merits.

The Union argues that there is neither any implied term in the CBA nor any past history or practice that would permit ABX to impose the IME requirement, which the Union views as a change in working conditions. Rather, the Union contends, because Article 16.A of the CBA provides that "[t]he physical standards required of a crewmember shall be the standards established by [the FAA]," and because Russell had obtained a second class airman medical certificate from the FAA, only the FAA had the authority to determine Russell's fitness to fly and ABX had no right to require

anything further before permitting Russell to return to work. ABX argues that while Article 16.A establishes that ABX's standards must be the same as those set by the FAA, neither the CBA nor anything in the applicable sections of the Code of Federal Regulations, 14 C.F.R. §§ 67.1 et seq., requires that the FAA is the sole determiner of whether those standards have been met.

ABX makes several arguments in support of its position. 14 C.F.R. § 67.201 provides that "[t]o be eligible for a second class airman medical certificate, and to remain eligible for a second class airman medical certificate, a person must meet the requirements of this subpart." ABX contends that this language sets the standard that the pilot must meet in order to obtain the FAA medical certificate necessary to permit him to fly, but does not guarantee the holder of such a certificate the right to fly regardless of the concerns of his employer. ABX points to Article 1.B of the CBA, which declares that the purpose of the CBA is to "further, to the fullest extent possible, the safety of air transportation . . ." and recognizes that the parties have a duty to "cooperate fully" to advance this purpose. Ensuring that its pilots are in fact fit to fly, ABX argues, is a safety function within the managerial discretion afforded ABX by the implied terms of the CBA, and requiring an IME before a pilot returns to duty following disability leave is an exercise of that discretion. Finally, ABX points to the negotiations leading to the 1997 CBA, during which the negotiators discussed making changes to Article 16 in the 1992 CBA in order to specify a procedure for choosing a doctor for an IME. Ultimately, no changes were made in that article, which, ABX argues, shows that at the very least the parties considered the propriety of requiring IMEs to be an open question under the CBA.

We hold that ABX's claim that it has the right to require employees to submit to IMEs before returning from disability is neither "obviously insubstantial or frivolous, nor made in bad faith," *Conrail*, 491 U.S. at 310, but rather, is arguably justified under the written and implied terms of the parties' 1997 CBA and the applicable law. Accordingly, we hold that this dispute is a minor one for the purposes of the RLA, over which the district court lacked jurisdiction. *See ABX II*, 274 F.3d. at 1028 ("The adjustment board exercises exclusive jurisdiction over minor disputes.") Whether the terms of the 1997 CBA, in fact, allowed ABX to require Russell to submit to an IME must be determined by the System Board of Adjustment.

## IV.

Accordingly, we **VACATE** the judgment of the district court and **REMAND** this matter with instructions that it be dismissed.