Ass'n v. ABX Air*                    Nos. 00-3965/3980

Board's decision drew its essence from the agreement. We therefore reinstate the Board's decision.

III.

For the reasons set forth above, we affirm the district court's dismissal of Count II, reverse the district court's grant of summary judgment in favor of the Union on Count I, and reinstate the Board's award.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0424P (6th Cir.)
File Name: 01a0424p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————

AIRLINE PROFESSIONALS
ASSOCIATION OF THE
INTERNATIONAL
BROTHERHOOD OF
TEAMSTERS, LOCAL UNION
NO. 1224, AFL-CIO,
     *Plaintiff-Appellee/
     Cross-Appellant,*

    *v.*

ABX AIR, INC.,
     *Defendant-Appellant/
     Cross-Appellee.*

Nos. 00-3965/3980

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00073—Sandra S. Beckwith, District Judge.

Argued: October 30, 2001

Decided and Filed: December 18, 2001

Before: KEITH, KENNEDY, and BATCHELDER, Circuit
Judges.

---

**COUNSEL**

---

**ARGUED:** E. Scott Smith, FORD & HARRISON, Atlanta, Georgia, for Appellant. John R. Doll, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellee. **ON BRIEF:** E. Scott Smith, FORD & HARRISON, Atlanta, Georgia, Scott A. Carroll, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellant. John R. Doll, Julie C. Ford, LOGOTHETIS, PENCE & DOLL, Dayton, Ohio, for Appellee.

---

**OPINION**

---

KENNEDY, Circuit Judge. Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("the Union") filed a two count complaint against ABX Air, Inc., seeking review of an arbitration award. ABX is an overnight express freight carrier by air. The Union is the duly authorized bargaining agent for ABX pilots (or crewmembers) for the purposes of negotiation and administration of a collective bargaining agreement between ABX and the International Brotherhood of Teamsters-Airline Division. Count I of the Union's complaint alleged that ABX breached its obligations under the collective bargaining agreement by unilaterally implementing a random search policy. Count II alleged that ABX's action violated the Railway Labor Act ("RLA"). The district court dismissed as untimely Count II of the complaint in an order entered on April 24, 2000. The parties then filed cross-motions for summary judgment on Count I. On July 31, 2000, the district court granted the Union's motion, denied ABX's motion, and vacated the arbitration board's award. ABX appeals the district court's order granting summary judgment in favor of the Union on Count I. The Union cross-appeals the district court's dismissal of Count II. We affirm

Cir. 1997). By concluding that ABX was entitled to unilaterally implement a random search policy despite acknowledging that such a policy was not expressly provided for in the collective bargaining agreement, the Arbitrator improvidently imposed an additional requirement not called for by the CBA. Therefore, the decision failed to draw its essence from the agreement and must be vacated.

(App. at 87).

We cannot agree with the district court's reasoning. Rather than ignoring federal case law, the Board correctly applied federal case law, not to mention general arbitration principles, in interpreting the agreement. This court recently reiterated that management retains discretion on managerial issues not discussed in the Agreement. *Appalachian Regional Healthcare*, 245 F.3d at 606. This principle stems from the understanding that collective bargaining agreements are not complex codes that expressly regulate every conceivable employment matter. Rather, as the Supreme Court has stated:

Collective bargaining agreements regulate or restrict the exercise of management functions; they do not oust management from the performance of them. Management hires and fires, pays and promotes, supervises and plans. All these are part of its function, and absent a collective bargaining agreement, it may be exercised freely except as limited by public law and by the willingness of employees to work under the particular, unilaterally imposed conditions.

*Warrior & Gulf Navigation*, 363 U.S. at 583 (cited in *Appalachian Regional Healthcare*, 245 F.3d at 606). The Board was not imposing a new requirement outside the agreement. To the contrary, the Board was interpreting the agreement in light of federal case law, generally accepted labor principles, and the past practices of the parties. The

the scope of its jurisdiction.  The court correctly noted that where an arbitrator's decision fails to draw its essence from the terms of the collective bargaining agreement, the award is beyond the jurisdiction of the arbitrator.  An arbitrator's award will be overturned for failure to draw its essence from the agreement only where 1) the award conflicts with the express terms of the agreement, 2) the award imposes additional requirements that are not expressly provided in the agreement, 3) the award is without rational support or cannot be rationally derived from the terms of the agreement, or 4) the award is based on general considerations of fairness and equity rather than the precise terms of the agreement.  *See Appalachian Regional Healthcare*, 245 F.3d at 604-05 (citing cases).[1]  In this case, the district court concluded, the Board's decision "impose[d] additional requirements not expressly provided for in the agreement," and therefore failed to draw its essence from the agreement.  The district court reasoned:

> [T]he Arbitrator found that the collective bargaining agreement was silent with respect to the issue of random searches.  The Arbitrator then concluded that ABX was entitled to freely manage its operations within the gaps left by the collective bargaining agreement.  In so concluding, the Arbitrator relied on a 1978 arbitration decision reaching that conclusion.  Unfortunately, in ruling as he did, the Arbitrator ignored federal case law holding that an arbitrator's decision fails to draw its essence from the agreement where, *inter alia*, it imposes additional requirements not expressly provided for in the agreement.  *See Beacon Journal Publishing Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 600 (6th

---

[1] ABX makes the specious argument that an arbitrator's decision may be overturned only where all four of these conditions are met.  This argument is contrary to common sense, as well as several Sixth Circuit cases overturning arbitration awards where only some of the conditions are met.  *See, e.g., Appalachian Regional Healthcare*, 245 F.3d at 605 (affirming lower court's decision to vacate the award after concluding that conditions 1 and 2 were met, without discussing conditions 3 or 4).

the district court's dismissal of Count II, reverse the district court's grant of summary judgment in favor of the Union on Count I, and reinstate the Board's award.

## I.

The Union and ABX are parties to a collective bargaining agreement. The agreement presently under consideration was executed on June 25, 1997.  Prior to the execution of this agreement ABX maintained an employee handbook, which contained a search policy.  The search policy reserved to ABX the right, upon reasonable suspicion, to inspect the bags, parcels, and other items of employees brought into or taken out of the workplace.  In addition to the handbook, ABX required new employees, including crewmembers, to sign a release on their employment applications that permitted such searches.

In 1991, during the Gulf War, ABX stepped up its search procedures. All vehicles coming into the airport, all packages coming into the airport, and all visitors carrying packages were searched.  Employees were notified of the switch to a random search policy by postings on bulletin boards throughout the workplace.  The policy applied to all employees, including pilots, and was in effect for one or two months.

In 1995, ABX discovered that mechanics' tools were frequently missing from the workplace, and decided to implement random searching in an effort to solve the problem. The random searching was primarily targeted at the gate where mechanics left, but a company official testified that the policy was applicable to all employees.  Again, employees were notified of the policy change by bulletin board postings.  Although the new policy resulted in a decrease in the theft of mechanics' tools, ABX noticed an increase in the theft of customer packages.  At this point, ABX drafted a revised search policy.  In a memorandum sent to all employees in early 1997, ABX indicated that it was

implementing a new, permanent search policy that would allow ABX to search employees without reasonable suspicion, on a random basis. Failure to comply with a search request could result in discharge. The new policy would be distributed and placed on all of the ABX bulletin boards.

Shortly after the random search policy was implemented, several pilots complained that they were being repeatedly searched, and that they thought the searches amounted to harassment. In December, 1997, the Union filed a grievance on behalf of the pilots asking ABX to discontinue the random search policy. ABX refused. The Union subsequently submitted the matter to an RLA-created adjustment board ("the Board") for arbitration. The Union charged that ABX's unilateral implementation of the random search policy breached the collective bargaining agreement and violated the RLA. With respect to the breach of contract argument, the Board made the following findings of fact: 1) that ABX's search policies had always been applicable to pilots; 2) that the collective bargaining agreement was silent with respect to random searches; 3) that the new search policy applied to all employees, including pilots; 4) that ABX promulgated the new policy while the parties were actively negotiating; 5) that the collective bargaining agreement was executed approximately four months after the promulgation of the new search policy; 6) that the Union members were put on notice of the new policy in February, 1997, when the company posted it on bulletin boards; and 7) that the Union had the obligation to raise the matter during negotiations if it wished to curtail ABX's right to unilaterally implement the policy. The Board then cited prior arbitration decisions for the proposition that ABX retained the right to manage and operate its business unless the parties had curtailed that right in the collective bargaining agreement, even though the agreement did not contain an express "management's rights" provision. Based on these observations, the Board concluded that ABX did not violate the provisions of the collective bargaining agreement. With respect to the Union's contention that ABX violated the RLA, the Board concluded that it did

jurisdiction over minor disputes, the statute of limitations for major disputes is no longer in issue.

## B.  Breach of the Collective Bargaining Agreement

Next, we review the district court's order granting summary judgment in favor of the Union with respect to the breach of contract claim. Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). We review the district court's grant of summary judgment *de novo*. *See Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In reviewing the district court's decision, however, we must bear in mind the very narrow standard of review that federal courts are to employ when reviewing arbitration awards. Arbitration is a highly favored means of dispute resolution, and courts should exercise restraint in reviewing arbitration awards. *See United States Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564 (1960). A court may not overrule an arbitration award simply because its interpretation of the agreement differs from that of the arbitrator. *Enterprise Wheel*, 363 U.S. at 599.

The decisions of RLA-created adjustment boards are subject to a standard of review that is among the narrowest known to the law. *See Atchison, Topeka, & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987). Overturning the award of a board of adjustment is limited to three specific grounds: 1) failure of the board to comply with the requirements of the RLA; 2) failure of the board to conform, or confine, itself to matters within the scope of its jurisdiction; and 3) fraud or corruption. 45 U.S.C. § 153 First (q); *Union Pacific R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978).

The district court here overturned the Board's award on the ground that the Board failed to confine itself to matters within

2) it imposed a time limit on recovery from drug addiction, unlike the prior medical policy, which had prevented the employer from terminating an employee until the employee's medical condition improved, without a time limit on the recovery period, and 3) it would, for the first time, permit the employer to regulate the private, off-duty conduct of the employees. *See id.* at 316. The Court found that all of these arguments "conceivably could carry the day in arbitration," but that they were insufficient to show that the employer's contractual arguments were "frivolous or insubstantial." *Id.* at 317. Because the establishment and enforcement of medical standards had been left in the hands of the employer in the past, the employer's argument that it had a right, under the agreement, to implement regular drug testing was "arguably justified." Thus, the dispute was a minor one, and the district court properly dismissed the case for lack of subject matter jurisdiction.

In this case, we conclude that the dispute involving the random searching of Union members is a minor one. As in *Conrail*, random searches are not specifically addressed by the collective bargaining agreement. Nonetheless, the court finds it at least arguable that the implied terms of the agreement permit ABX to unilaterally implement random searches. As discussed more fully below, management retains discretion with respect to the hiring, firing, promoting, supervising, planning, and other management functions, except as limited by the collective bargaining agreement and public law. *Appalachian Regional Healthcare v. United Steelworkers of America*, 245 F.3d 601, 604-05 (6th Cir. 2001). Moreover, ABX had, in the past, exercised unilateral control over its employee searching policy. Thus, as in *Conrail*, ABX's position is "arguably justified" by the implied terms of the collective bargaining agreement. ABX's contention that it retained discretion under the agreement to unilaterally impose the random search policy is neither "frivolous" nor "insubstantial." The dispute is, therefore, a minor one that was properly before the adjustment board under 45 U.S.C. § 184. Because the board has exclusive

not have jurisdiction to decide the issue. Finally, the Board found that ABX's implementation of the unilateral search policy was neither unreasonable nor unenforceable. Hence, the Board denied the Union's grievance in its entirety.

The Union brought suit in the Southern District of Ohio challenging the Board's decision with respect to the breach of contract, and adding a federal claim under § 156 of the RLA. The district court dismissed the Union's RLA claim, but granted summary judgment in favor of the Union with respect to the breach of contract claim. Both parties appeal.

## II.

### A.  Violation of the RLA

We first address the district court's dismissal of the Union's RLA claim. We review *de novo* the district court's dismissal of that claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Amini v. Oberlin College*, 259 F.3d 493, 497 (6th Cir. 2001). In doing so, "[w]e view the complaint in the light most favorable to the plaintiff, treat all well-pleaded allegations therein as true, and will dismiss the plaintiff's claims only if it is without doubt that the plaintiff 'can prove no set of facts in support of the claims that would entitle him to relief.'" *Id.* at 497-98 (quoting *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 445-46 (6th Cir. 2000)).

The district court determined that the Union's RLA claim was time-barred, borrowing the six-month statute of limitations from § 10(b) of the National Labor Relations Act. The Union contends that the district court's application of the NLRA limitations period was in error. We need not address that question, however, because we find that the Union's RLA claim should have been dismissed for lack of subject matter jurisdiction.

Under the RLA, disputes are separated into two distinct categories: major disputes and minor disputes. *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945) (adopting

the major/minor dispute terminology as shorthand to describe the statutory categories); *Compare* 45 U.S.C. § 152 Seventh and § 156 (major disputes) *with* 45 U.S.C. § 152 Sixth, § 153 First, and § 184 (minor disputes). The distinction between these two categories has important procedural implications. For major disputes, the RLA mandates a lengthy process of negotiation and mediation before either party may resort to self-help. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302-03 (1989) (hereinafter "*Conrail*"). Until the negotiation and mediation process is exhausted, the parties must "maintain the status quo, and the employer may not implement the contested change in rates of pay, rules, or working conditions." *Id.* Federal district courts have subject matter jurisdiction to enforce the status quo pending completion of the statutorily prescribed procedures. *Id.* at 303. A minor dispute, in contrast, is subject to compulsory and binding arbitration before an adjustment board. *See* 45 U.S.C. § 184; *Conrail*, 491 U.S. at 303. The adjustment board exercises exclusive jurisdiction over minor disputes. Judicial review of the adjustment board's decision is limited, and there is no requirement that the parties maintain the status quo pending board resolution of the dispute. *See Conrail*, 491 U.S. at 304.

In *Conrail*, the Supreme Court clarified the difference between major and minor disputes. The distinction, the Court stated, does not turn on the importance of the issue involved, or on whether the issue is likely to lead the parties to resort to economic self-help, such as strikes or lockouts. *See id.* at 305. Rather, the distinction "looks to whether a claim has been made that the terms of an existing agreement either establish or refute the presence of a right to take the disputed action. The distinguishing feature of such a case is that the dispute may be conclusively resolved by interpreting the existing agreement." *Id.* Where the dispute can be resolved by interpreting the terms of the collective bargaining agreement, it is a minor dispute. Where the dispute concerns rights that do not already exist under the collective bargaining agreement, but rather constitutes an attempt to create new

rights, it is a major dispute. The *Conrail* Court phrased the distinction as follows:

> [I]f an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (*i.e.*, the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.

*Id.* at 310. The distinction between major and minor disputes becomes more complicated, however, when considering *implied* terms of the collective bargaining agreement. Such implied terms are part of the collective bargaining agreement, and might arguably justify the company's challenged actions, leading to the conclusion that the dispute is a minor one. Because collective bargaining agreements are meant to be "generalized code[s] to govern a myriad of cases which the draftsmen cannot wholly anticipate," the parties' prior "practice, usage and custom" is relevant in determining the rights of the parties under the agreement. *Id.* at 311-12.

In *Conrail*, the employer implemented regular drug screening as part of the required physical examination of employees. In the past, drug screening had been used only where the employer had cause to believe that the employee might have been using drugs. The Supreme Court, examining undisputed evidence of the prior practices of the parties, determined that the unilateral imposition of regular drug screening as part of the required physical examinations was "arguably justified" by the implied terms of the collective bargaining agreement. *See id.* at 311-20. The Court noted that the employer had unilaterally implemented the medical standards and procedures for the required examinations in the past. *See id.* at 313. The union argued, however, that adding regular drug screening was a material departure from the past practices, because: 1) it would permit testing without cause,