**NORFOLK SOUTHERN RAILWAY COMPANY, Plaintiff,**

v.

**INTERNATIONAL LONGSHORE-MEN'S ASSOCIATION, Local 1913, et al., Defendants.**

**No. 1:01 CV 333.**

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 31, 2002.

---

John B. Lewis, Thomas J. Piatak, David S. Winston, Baker & Hostetler, Cleveland, OH, for Plaintiff.

David E. Roloff, Shapero & Roloff, Cleveland, OH, for Defendants.

***Memorandum of Opinion and Order***

GAUGHAN, District Judge.

***Introduction***

This matter is before the Court upon plaintiff's Motion for Summary Judgment (Doc. 17) and defendants' Motion for Summary Judgment (Doc. 24). The issue before this Court is whether the parties' present dispute over a Fire Watch position is a "minor" or "major" dispute under the Railway Labor Act. For the following rea-

sons, plaintiff's Motion is GRANTED and defendants' Motion is DENIED.

### Facts

Plaintiff, Norfolk Southern Railway Company (hereafter, plaintiff), brought this Complaint for Declaratory and Injunctive Relief against defendants, International Longshoremen's Association, Local 1913 (hereafter, ILA), and its officers, C.E. Turnquist, president; P.J.Daniels, treasurer; M.A. Fuller, vice president; and J.R. Leonard, secretary (hereafter, collectively referred to as defendants).

In 1998 or 1999, plaintiff took over from Consolidated Rail Corporation (hereafter, Conrail) the operation of a coal dock located in Ashtabula, Ohio (hereafter, the Ashtabula Coal Dock or the coal dock). On April 12, 1999, plaintiff and the ILA entered into a collective bargaining agreement (hereafter, Agreement) governing the ILA represented employees at the coal dock, effective June 1, 1999. The Agreement provides in "Article I–Scope" (hereafter, the Scope paragraph):

> This agreement contains the rules governing rates of pay and working conditions of production and maintenance employees (excluding office and clerical employees, watchmen, guards, professional employees and supervisors) at [plaintiff's] Ashtabula Ohio Coal Dock represented by the [ILA].

(Compl.Ex. A). Plaintiff and the ILA also entered into an Implementing Agreement that included Side Letter No. 1 dated March 12, 1999 which provides in part:

> [I]n regard to the Fire Watch position, it is understood that [plaintiff], as a result of these agreements, does not currently intend to eliminate the Fire Watch position. However, such understanding does not preclude [plaintiff] from chang-

ing its policies and procedures applicable to such position in the future.

(Doc. 24 Ex. B).

The Fire Watch position was created in 1983 by Conrail following a severe fire at the coal dock while no crew was on duty and which consumed tons of coal. It was decided that a fire watchman would be on duty to police the property for fires. The created position was performed by an ILA represented employee until early 2001. The position was performed when the crews were not working on the coal dock. (Anthony Lictate depo. 7–10; Bryant Johnson depo. 12, 18).

Around December 2000, plaintiff decided to make a change to the Fire Watch position. Previously, plaintiff was paying overtime for performance of the job on weekends. Bryant Johnson, plaintiff's dock supervisor, and Anthony Licate, plaintiff's Director of Labor Relations, had a discussion regarding the assignment of the position's duties so as to avoid these expenses that plaintiff was currently incurring. They decided to put a "watchman" on third shift Monday through Friday. The position would be relieved on weekends by an employee called from the "extra board" who would be paid "straight time." (Johnson depo. 25; Licate depo. 36–38). Johnson reviewed the Agreement and concluded, based on the Scope paragraph, set forth above, that he could make changes in the position. (Johnson depo. 28–29). That is, he concluded that the Fire Watch position was excluded from the Agreement and, therefore, plaintiff could unilaterally change it. Johnson then approached Turnquist, ILA's president, and discussed posting a "fire watch/watchman" position for third shift. Originally the position's duties included security at the coal dock, but upon Turnquist's objection, the security portion of the position was eliminated. (Johnson depo. 18–21, 30–31). The

position entitled "Watchman (Fire Watch)" for third shift Monday through Friday was posted on January 11, 2001 for bid by ILA employees. (Doc. 23 Ex. 6).

Shortly following the posting, Turnquist objected to it on the basis that "grandfathered employees" would not have received overtime pay to which they were entitled for weekend work. (Johnson depo. 31, 38–39). Plaintiff then cancelled the job posting on January 16, 2001. (Doc. 23 Ex. 8). Johnson and Licate decided to assign the position to a supervisor, a non-ILA employee, to avoid paying the overtime on Saturday and Sunday. (Licate depo. 41–42, Johnson depo. 44–45).

On February 2, 2001, Turnquist wrote a letter to plaintiff stating in part:

> On January 11, 2001, [plaintiff] without any prior discussion or negotiation with [ILA], unilaterally changed the parties' [Agreement] by posting... for a 'Watchman (Firewatch).' [Plaintiff] therefore abolished the existing 'Firewatch' position, and gave it a new name, falling outside the bargaining unit. The [posting] also made no provision for grandfathered employees, who should have been awarded the 'Firewatch' job and given the opportunity to work their rest days on Saturdays and Sundays.
>
> On January 16, 2001, [plaintiff] canceled the 'Watchman (Firewatch)' advertisement and arbitrarily assigned the Firewatch duties to Supervisors. [ILA] deems that the [plaintiff's] actions create a major dispute under the railway Labor Act. If [plaintiff] desires to make any changes to the Firewatch position, it must do so through negotiations with [ILA]. Until there is a negotiated agreement allowing changes to be made to the Firewatch position, the Firewatch job should be filled by ILA people...

(Doc. 23 Ex. 9).

By letter of February 8, 2001, plaintiff notified Turnquist that plaintiff had not unilaterally changed the Agreement because based on the Scope paragraph "watchmen and guard duties are expressly excluded from coverage under the scope of [the Agreement]" and pursuant to Side Letter No. 1, plaintiff "may change its policies and procedures with regard to the Fire Watch position without negotiating such changes with the ILA." Plaintiff further noted that Turnquist had agreed to the posting of the "Watchman (Fire Watch)" position after the term "security" had been eliminated. Plaintiff stated that it considered the disagreement a "minor dispute" which must be arbitrated pursuant to the provisions of the Railway Labor Act, and not a "major dispute" justifying a work stoppage. (Doc. 23 Ex. 10).

Also on February 8, plaintiff filed its Complaint requesting that this Court issue a declaratory judgment that "(1) defendants' claim that [plaintiff] violated its [Agreement] by not assigning certain watchmen duties to ILA represented employees is a minor dispute within the meaning of the [Railway Labor Act (hereafter, RLA), 45 U.S.C. § 151 *et seq.*], and not a major dispute" and "(2) defendants cannot lawfully engage in any work stoppage or other coercive job action over this dispute." Plaintiff also sought injunctive relief enjoining defendants from engaging in strikes, work stoppages, picketing, "sick-outs," "mark-offs," or slowdowns.

This matter is now before the Court upon the parties' cross motions for summary judgment.

### Standard of Review

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)); *see also LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993). The

burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir.1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir.1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citation omitted).

### *Discussion*

The issue herein is whether the present dispute over the Fire Watch position is "major" or "minor" within the meaning of the RLA.

 The Sixth Circuit has recently explained the distinction between major and minor disputes under the RLA:

> Under the RLA, disputes are separated into two distinct categories: major disputes and minor disputes. *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (adopting the major/minor dispute terminology as shorthand to describe the statutory categories)... The distinction between these two categories has important procedural implications. For major disputes, the RLA mandates a lengthy process of negotiation and mediation before either party may resort to self-help. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 302–03, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Until the negotiation and mediation process is exhausted, the parties must "maintain the status quo, and the employer may not implement the contested change in rates of pay, rules, or

working conditions." *Id.* A minor dispute, in contrast, is subject to compulsory and binding arbitration before an adjustment board. *See* 45 U.S.C. § 184; *Conrail,* 491 U.S. at 303, 109 S.Ct. 2477, 105 L.Ed.2d 250. The adjustment board exercises exclusive jurisdiction over minor disputes. Judicial review of the adjustment board's decision is limited, and there is no requirement that the parties maintain the status quo pending board resolution of the dispute. *See Conrail,* 491 U.S. at 304, 109 S.Ct. 2477, 105 L.Ed.2d 250.

... Where the dispute can be resolved by interpreting the terms of the collective bargaining agreement, it is a minor dispute. Where the dispute concerns rights that do not already exist under the collective bargaining agreement, but rather constitutes an attempt to create new rights, it is a major dispute.

*Airline Professionals Ass'n of Intern. Broth. of Teamsters, Local Union No. 1224, AFL–CIO v. ABX Air, Inc.,* 274 F.3d 1023 (6th Cir.2001).

■ Accordingly, a "minor dispute" involves disagreement over the interpretation of an existing collective bargaining agreement which must be resolved through arbitration and strikes or similar work stoppages are not permitted. *Kaufman v. Allied Pilots Ass'n,* 274 F.3d 197, 201 (5th Cir.2001) (citations omitted) ("The RLA requires that 'minor disputes' including those over the meaning of a collective bargaining agreement provision on pay, rules, or working conditions, be submitted to binding arbitration in the event that negotiations fail to produce a solution.... Federal district courts may ... enjoin strikes over minor disputes in enforcing the RLA."), *Hirras v. National R.R. Passenger Corp.,* 44 F.3d 278 (5th Cir.1995) (Minor disputes involve interpretation or application of the collective bargaining agreement and "are to be contrasted with

'major disputes,' which present larger issues about which strikes ordinarily arise because they seek to create rather than to enforce contractual rights....") and *CSX Transp. Inc. v. Marquar,* 980 F.2d 359, 361 (6th Cir.1992) (citations omitted) (" 'Minor disputes' are controversies over the meaning or application of an existing collective bargaining agreement... If the parties cannot resolve minor disputes on their own, they are submitted to the National Railroad Adjustment Board for final resolution. The Board has exclusive jurisdiction over minor disputes, and a party cannot bypass the Board and take the dispute into federal court, except to enforce the Board's award.... The RLA forbids strikes over minor disputes.")

■ A dispute that is "arguably justified" by the terms of the collective bargaining agreement is minor. *Brotherhood of Maintenance of Way Employees v. Burlington Northern Santa Fe R.R.* 270 F.3d 637 (8th Cir.2001) and *Airline Professionals, supra,* (citations omitted) ("If an employer asserts a claim that the parties' agreement gives the employer the discretion to make a particular change in working conditions without prior negotiation, and if that claim is arguably justified by the terms of the parties' agreement (i.e., the claim is neither obviously insubstantial or frivolous, nor made in bad faith), the employer may make the change and the courts must defer to the arbitral jurisdiction of the Board.")

■ By contrast "major disputes" relate to the formation or modification of collective bargaining agreements and employers or unions may resort to what is called "self-help" once negotiations break down. *Renneisen v. American Airlines, Inc.,* 990 F.2d 918, 922 (7th Cir.1993), *Fairbairn v. United Air Lines, Inc.,* 250 F.3d 237, 240 (4th Cir.2001) and *CSX, supra* (" 'major disputes' result from a disagreement in the bargaining process for a new contract or

over a change in a term of an existing contract for pay, rules and working conditions. When a major dispute arises, neither party can alter the status quo by striking or altering pay, rules or working conditions until the parties have exhausted the negotiation and arbitration procedures set up by the RLA.").

■ Plaintiff argues that the dispute herein is a minor dispute because it arises out of and requires interpretation of the parties' agreements, specifically the Scope paragraph of the Agreement and Side Letter No. 1. Plaintiff asserts that this dispute is minor because its interpretation of the Agreement and Side Letter is "arguably justified" and not "obviously insubstantial, frivolous, or made in bad faith." *Airline Profs., supra.* Plaintiff reasons that the Scope paragraph excludes "watchmen" and "guards" from the Agreement. And, it is plaintiff's interpretation that because the position at issue involves the inspection of dock property and coal piles (Licate depo. 8, Turnquist depo. 44) it is that of a "watchman" and excluded under the Agreement. Plaintiff further reasons that the Side Letter demonstrates that Fire Watch employees are not part of the Agreement and it gives plaintiff the right to change the policies and procedures applicable to the Fire Watch position.

Defendants argue that the dispute herein is a "major dispute" because it relates to the modification of the Agreement inasmuch as plaintiff had no contractual basis for removing the Fire Watch job from ILA members and, therefore, made a unilateral change. Defendants assert that the Scope paragraph does not expressly exclude the Fire Watch job from its coverage. Additionally, defendants point to Turnquist's deposition testimony that a "firewatch person/fire watchman" is different from a watchman or guard because "firewatchmen" do not carry guns. (Turnquist depo. 75). Rather, defendants assert that the duties of the Fire Watch position involve "maintenance" which is expressly included in the Scope paragraph. Again, defendants point to Turnquist's testimony that the Fire Watch duties include monitoring the dock and coal piles for fire and spraying water. (*Id.* 44). As such, defendants posit that the Fire Watch job is a bargaining unit position and plaintiff's attempts to remove this work from the ILA and assign it to supervisors is a unilateral change in working conditions, making it a "major dispute."

Nor, defendants assert, is plaintiff's position arguably justified by Side Letter No. 1. Defendants assert the Side Letter was included with the Implementing Agreement for the purpose of giving written protection to ILA's right to represent the workers performing the Fire Watch functions, not to give plaintiff the right to eliminate the job and assign it to supervisors.

Defendants also argue that plaintiff's action in changing the name of the position from Fire Watch to watchman was admittedly an attempt to take the position outside the coverage of the Scope paragraph and is an admission that it was understood that the position was covered by the Agreement.

Finally, defendants argue that reassigning the Fire Watch position to a supervisor involved changing the existing Agreement as demonstrated by plaintiff's filing of a "Section 6 Notice" which is required under the RLA when a change in the terms of a collective bargaining agreement is proposed.[1] Defendants assert that in this No-

---

**1.** "The RLA provides that a railroad may not change the working conditions of its employees except in the manner prescribed in [the collective bargaining agreement] or in section 6 of the RLA." *Norfolk and Western Railway Co. v. Brotherhood of R.R. Signalmen,* 164 F.3d 847, 852 (4th Cir.1998). The section 6 notice "marks the beginning of the bargaining

tice plaintiff requested that it have the ability to make the change to the Fire Watch position. In support of this argument, defendants point to plaintiff's letter of February 22, 2000. (Doc. 24 Ex. F). Therein, among other things, plaintiff attached a list of proposed changes it desired to make to the Agreement. Defendants point out that among the proposed changes plaintiff sought to "Eliminate any existing scope rules or other restrictions on subcontracting of work, and any other existing impediments to less costly and/or more efficient alternative methods of performing work..." (*Id.*).

For the following reasons, the Court finds that this is a minor rather than a major dispute.

The dispute herein is minor because it relates to the interpretation of the Agreement, i.e., whether the Fire Watch position is covered by the Scope paragraph and whether the Side Letter demonstrates that the Fire Watch position was excluded from the Scope paragraph. Furthermore, plaintiff has asserted a claim that the Agreement herein gives it the discretion to unilaterally change the Fire Watch position and this claim is arguably justified by the terms of the Agreement because the Scope paragraph appears to exclude the Fire Watch position inasmuch as it expressly excludes guards and watchmen. Defendants' assertion that the Fire Watch position is a "maintenance" position merely underscores that the dispute herein involves an interpretation of the Agreement, i.e., whether the Fire Watch position is a watchman or guard or whether it is a maintenance job.

This is not a major dispute because it does not relate to the unilateral modification of the Agreement as the Fire Watch

position is not expressly covered by the Agreement.

Nor does the Court find that plaintiff issued a Section 6 Notice regarding the Fire Watch dispute. First, the language relied upon by defendants in plaintiff's February 2000 letter does not clearly relate to the Scope paragraph at issue here. Rather, it generally refers to "existing scope rules or other restrictions on subcontracting of work..." Second, plaintiff submits Licate's declaration which states that the proposals attached to the February 22 letter "in no way related to the Fire Watch/Watchmen position at the Ashtabula Coal Dock." He additionally states the letter included a "standardized set of proposals... [which] represented proposed changes in collective bargaining agreements sought by carriers across the country..." (Licate decl.). This evidence is not disputed by defendants.

Furthermore, the Side Letter demonstrates that this dispute is a "minor" one inasmuch as it shows that the parties differ over its proper interpretation. Additionally, a reasonable argument can be made that the Side Letter shows that the Fire Watch position was not covered by the Agreement inasmuch as the ILA would not have been inclined to agree to its language had the position been part of the bargaining unit.

Finally, defendants' assertion that plaintiff's use of the term "watchman" rather than "Fire Watch" shows that plaintiff believed the Fire Watch position was within the Scope paragraph of the Agreement is unpersuasive. While plaintiff may have been engaging in some maneuvering so that it would appear beyond dispute that the position was expressly excluded from the Agreement, this does not mean that, as

---

process for major disputes,"i.e., "disputes over potential changes to the collective bargaining agreement affecting rates of pay,

rules, or working conditions." *Norfolk Southern Ry. Co. v. Brotherhood of Locomotive Engineers,* 217 F.3d 181, 185 (4th Cir.2000).

a matter of law, the Fire Watch position was included in the Scope.

For the foregoing reasons, this is a minor dispute and, therefore, it is subject to compulsory and binding arbitration before an adjustment board. *See* 45 U.S.C. § 184; *Conrail,* 491 U.S. at 303, 109 S.Ct. 2477, 105 L.Ed.2d 250. Plaintiff is also, therefore, entitled to its declaration that work stoppages are not permitted over this dispute.[2]

### Conclusion

For the foregoing reasons, plaintiff's Motion is granted and defendants' Motion is denied.

IT IS SO ORDERED.

---

2. Although plaintiff did not move for summary judgment on its request for injunctive relief, it is intertwined with the issues herein.