**Marsha D. DOTSON, Plaintiff–Appellant,**

v.

**NORFOLK SOUTHERN RAILWAY COMPANY, and Norfolk Southern Corporation, Defendants–Appellees.**

**No. 01–1581.**

United States Court of Appeals, Sixth Circuit.

Nov. 22, 2002.

Before KEITH and DAUGHTREY, Circuit Judges, and KATZ, District Judge.*

PER CURIAM.

Plaintiff–Appellant Marsha D. Dotson appeals from the district court's grant of summary judgment to Defendants–Appellees Norfolk Southern Railway Company ("railway company") and Norfolk Southern Corporation (collectively "Norfolk"). Dotson also appeals from the district court's determination that her disparate treatment claim in Count I is preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151–188. For the reasons stated herein, we find no error and affirm.

## I.  BACKGROUND

Dotson is an African–American female and was employed with the railway company as a clerk. She was last employed with the railway company in September 1999. During the period May 1997 to August 1999, Dotson applied for and was denied a transfer to a stenographer and other positions advertised as vacant by the employer. Dotson asserts that she was otherwise qualified for these positions and was denied the positions based on her race. Dotson also asserts that during the course of her employment she was subjected to disparate discipline, name calling, and other forms of racial harassment. Dotson's specific allegations are more fully discussed herein within the context of each individual claim.

Plaintiff filed suit in state court in the Wayne County Circuit Court on June 16,

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

1999 alleging disparate treatment, hostile work environment, and retaliation in violation of Michigan's Elliott–Larsen Civil Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101 et seq. Dotson also asserts claims of gross negligence and intentional infliction of ·emotional distress. Norfolk removed the action based on diversity jurisdiction and subsequently filed a motion for summary judgment. The district court conducted a hearing on Norfolk's motion on February 28, 2001 and issued an order on April 12, 2001 granting Norfolk's motion as to all claims. Dotson timely filed a notice of appeal on April 26, 2001.

## II. DISCUSSION

### A. Standard of Review

The Court reviews de novo a district court's order granting summary judgment. *See Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir.2001). Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56(c). The Court must consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson*, 250 F.3d at 405. "However, the party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson*, 250 F.3d at 405.

### B. Count I—ELCRA Claims

Pursuant to the ELCRA, Dotson asserts claims for disparate treatment, hostile work environment, and retaliation. The act provides in part that it shall be unlawful for an employer to discriminate against an employee because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status. MICH. COMP. LAWS § 37.2102(1). Claims of race discrimination brought under the ELCRA are analyzed under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir.1999).

For the first time in its motion for summary judgment, Norfolk raised a preemption issue based upon the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151–188.[1] Norfolk asserted that Dotson's claims, at least in part, were preempted because of the existence of a collective bargaining agreement ("CBA").

Where resolution of a state law claim requires interpretation of a CBA, such claims are preempted by the RLA. "Under the RLA, disputes are separated into two distinct categories: major disputes and minor disputes." *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. ABX Air, Inc.*, 274 F.3d 1023, 1027–28 (6th Cir.2001). Where a claim is resolved by interpreting the terms of the CBA, it is a minor dispute. *See id.* at 1028. "Where the dispute concerns rights that do not already exist under the collective bargaining agreement, but rather constitutes an attempt to create new rights, it is a major dispute." *Id.*

The RLA requires that minor disputes be submitted through the grievance procedures described in the CBA. *See Andrews*

---

1. On appeal, Dotson complains that Norfolk did not raise the preemption issue in its responsive pleadings. In the instant action, the preemption issue goes to subject matter jurisdiction. Subject matter jurisdiction may be raised at any time. *See* FED. R. CIV. P. 12(h)(3).

*v. Louisville & N.R. Co.*, 406 U.S. 320, 322, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (grievance procedures of the collective bargaining agreement are the mandatory and exclusive means of settling minor disputes). "If the parties cannot resolve minor disputes on their own, they are submitted to the National Railroad Adjustment Board for final resolution. 45 U.S.C. § 153, First (i) & (m). The Board has exclusive jurisdiction over minor disputes, and a party cannot bypass the Board and take the dispute into federal court, except to enforce the Board's award." *CSX Transp., Inc. v. Marquar*, 980 F.2d 359, 361 (6th Cir.1992); *Airline Prof'ls*, 274 F.3d at 1028 ("[t]he adjustment board exercises exclusive jurisdiction over minor disputes").

### 1. Disparate Treatment

■ In the instant action, the district court determined that the disparate treatment claim was a "minor" dispute and thus preempted by the RLA. The district concluded that the disparate treatment claim was preempted because:

> Whether or not Plaintiff was disciplined more harshly [than other employees] or . . . should have been disciplined at all, depends upon an interpretation of the CBA regulations regarding discipline. In addition, whether or not Plaintiff should have been allowed to sit at the front desk, depends on the CBA provisions regarding seniority and regarding who could "fill in" there when needed. Lastly, whether or not Plaintiff was entitled to a position as a clerk stenographer depends on the CBA requirements regarding typing tests and qualification. In other words, in order to dispose of Plaintiff's claims, the Court will need to

**2.** Lyons testified that he used these initials because he could not type efficiently and used

look at more than just Defendants' motives.

J.A. 115.

For the reasons stated by the district court in its summary judgment ruling, we affirm this finding.

### 2. Hostile Work Environment

Dotson's harassment claim is self styled as a hostile work environment claim.

> Title VII prohibits racial harassment that creates a hostile or abusive work environment. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999). In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See id.* * * * [T]he work environment must be both objectively and subjectively offensive. *See Harris*, 510 U.S. at 21–22.

*Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir.2001).

■ In support of the hostile work environment claim, Dotson alleges:

1. A coworker, Harold Lyons, persistently used the initials "KKK" instead of his own initials on work documents;"[2]

2. On July 11, 1998 a coworker used the word "ungawa," interpreted by Dotson as a derogatory racial term;

only one or two fingers to type.

3. Other employees called her names such as "tar baby" and treated her harshly; and

4. Management continued to use a janitorial service that employed a worker who allegedy harassed Dotson by mopping over Dotson's feet and bumping into her.

In addition, certain incidents alleged in support of her other discrimination claims might support a hostile work environment charge, such as disparate discipline, not being allowed to sit at the front desk, and failure to promote based on race.

As noted by the district court, it is difficult to attribute racial motives to use of "ungawa." The term was used, allegedly by the speaker as in the Tarzan movies, as a salutation. In addition, when management was made aware of Dotson's complaint regarding Lyon's use of "KKK," the conduct ceased. Most notably, Dotson's allegations of name calling are supported in only very general terms, and she does not recount when or how often the incidents occurred, nor who made the disparaging remarks.

To establish a prima facie case, Dotson is required to demonstrate that the alleged conduct was so "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive," and that she subjectively regarded that environment as abusive. Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir.1997). Title VII is not a general civility code, see Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), and the conduct alleged by Dotson does not rise to the type regarded by this Circuit as severe or hostile. See, e.g., Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir.2000) (three incidents, though "not merely crude, offensive, and humiliating, but also contain[ing] an element of physical invasion" not sufficient to meet severe or pervasive stan-

dard); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir.2000) (holding that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment"); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (holding that simple teasing, offhand comments, and isolated incidents including a sexual advance did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment); Williams v. GMC, 187 F.3d 553 (6th Cir. 1999) (severe or pervasive standard met by fifteen incidents within one year including derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at the plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas).

For the reasons stated in the district court's well-reasoned opinion, the alleged conduct was not severe or pervasive enough to alter the conditions of Dotson's employment and the district court properly granted summary judgment to Defendants on this claim.

### 3. Retaliation

A party alleging retaliation under Title VII must establish: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir.1999). On the causal connection requirement, there must be evidence sufficient to raise an inference that the protected activity was the likely

motivation for the adverse action. *E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997). The EL-CRA, § 37.2701(a), specifically requires the plaintiff to demonstrate that "(1) he opposed violations of the Act or participated in an activity protected by the Act and (2) his opposition or participation was a 'significant factor' in the adverse employment action." *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir.1999).

▪ Dotson submits that the district court erred in determining that Dotson failed to establish she "was discriminated against, harassed and/or retaliated against." However, beyond the generalized retaliation assertion contained in various descriptive headings in her brief, Dotson offers no substantive arguments as to the continued viability of a retaliation claim and fails to link any protected activity to any discriminatory conduct. Therefore, we affirm the district court's grant of summary judgment to Defendants on this claim.

### C. Count II—Gross Negligence

▪ Notwithstanding the parties' dispute over whether Michigan recognizes the tort of gross negligence, the district court concluded that Plaintiff failed to establish a claim for even simple negligence and thus could not prevail on a claim for gross negligence. For the reasons stated by the district court in its summary judgment ruling, we agree that Dotson has not established the breach of any duty attributable to Defendants. Therefore, we affirm the district court's grant of summary judgment on this claim.

### D. Count III—Intentional Infliction of Emotional Distress

To prevail on this count, Dotson must establish "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress."

*Teadt v. St. John's Evangelical Church*, 603 N.W.2d 816, 823, 237 Mich.App. 567 (Mich.Ct.App.1999).

Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. It has been said that the case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim "Outrageous!"

*Id.* at 823–24 (internal citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills*, 536 N.W.2d 824, 833, 212 Mich.App. 73 (Mich.Ct.App.1995).

▪ In support of this claim Dotson asserts that "the conduct of the employees of the defendant employer was so outrageous in character so as to offend a reasonable person." J.A. 28. She specifically cites "use of KKK at work" and exposure "to constant hatred of Blacks." J.A. 29. Count III also incorporates by reference preceding paragraphs. In Count II, Dotson alleges that Norfolk "participated in and/or condoned discrimination, harassment and/or retaliation toward Plaintiff." J.A. 20.

The use of KKK, if intended as a racial statement, is deplorable, but in the instant action does not rise to the level of "extreme and outrageous" conduct. With respect to the "constant hatred of Blacks," Dotson does not direct the Court to any evidence to support this contention. On appeal, she asserts that this claim is adequately alleged in the complaint, but to prevail on summary judgment Dotson must go beyond the pleadings and direct

the Court to evidence in support of her claims. Even when looking at the sum of all the allegations made, Dotson is unable to establish that any employee's conduct meets the relevant standard. She therefore cannot impute vicarious liability to Norfolk for its employees' conduct. *See Teadt,* 603 N.W.2d at 824. Therefore, the Court affirm's the district court's grant of summary judgment to Norfolk on Count III.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendants on all claims.